F. Jay Rahimi, Esq. (SBN: 305286)
Jay@LALSLaw.com
**LOS ANGELES LEGAL SOLUTIONS, APLC**
7136 Haskell Ave., Suite 333
Van Nuys, CA 91406
Telephone:  (818) 510.0555
Facsimile:   (818) 510.0590

Sara F. Khosroabadi, Esq. (SBN: 299642)
sara@skblawoffice.com
**SKB Law Office**
5190 Governor Dr., Ste. 108
San Diego, CA 92122
Telephone: (858) 526-3053
Facsimile:  (858) 526-3052

*Attorneys for Plaintiffs,*
Alex Derval, Morgan Simmons, and
on behalf of all other similarly situated

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Alex Derval, Morgan Simmons, and on Behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**Xaler, a Cooperative Corporation and DOES 1-25,**<br><br>Defendants. | Case No.:<br><br><u>**CLASS ACTION**</u><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. Alex Derval (referred to as "Plaintiff Derval") and Morgan Simmons (referred to as "Plaintiff Simmons") (collectively referred to as "Plaintiffs"), bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Xaler, a Cooperative Corporation, and Does 1-25 (referred to as "Defendant" or "Xaler"), in negligently, knowingly, and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), thereby invading Plaintiffs' privacy. Plaintiffs allege as follows upon personal knowledge as to their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

2. The TCPA was designed to prevent unwanted calls and text messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only

> effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id.* At §§ 12-13. *See also, Mims*, 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

6. The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. See *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the text message).

/ / /

/ / /

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 47 U.S.C §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740 (2012), because Plaintiffs allege violations of federal law.

8. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) because Plaintiffs reside in Los Angeles, CA, the events giving rise to Plaintiffs' causes of action against Defendant occurred in the State of California within the Central District of California (in or around Los Angeles, CA) and Defendant conducts business in the area in Los Angeles and other counties within the Central District.

## PARTIES

9. Plaintiffs are, and at all times mentioned herein were, individuals, citizens and residents of the County of Los Angeles, in the State of California, who received the telephone call which is the subject of this complaint.

10. Plaintiffs are informed and believe, and thereon allege, that Defendant is, and at all times mentioned herein was a Corporation and therefore a "person," as defined by 47 U.S.C. § 153 (39).

11. Plaintiffs are informed and believe, and thereon allege, that Defendant is a California corporation with branches and offices nationwide. Plaintiffs are informed and believe, and thereon allege, that at all relevant times, Defendant conducted business in the State of California, and within this judicial district.

12. Defendant is a recreational marijuana delivery service.

## FACTUAL ALLEGATIONS

13. At all times relevant, Plaintiffs are, and at all times mentioned herein were individuals and therefore, each a "person" as defined by 47 U.S.C § 153 (39).

14. Defendant is, and at all times mentioned herein was as California corporation, and therefore a "person" as defined by 47 U.S.C. §153 (39).

## FACTUAL ALLEGATIONS AS TO PLAINTIFF DERVAL

15. Sometime prior to November 26, 2018, Plaintiff Derval was assigned, and became the owner of, a cellular telephone number from its wireless provider, with a number ending in "3301."

16. On or about November 26, 2018, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A).

17. Defendant sends text messages advertising its products and special deals using automatic telephone dialing equipment to drive people to purchase its products, use its services, and drum up business.

18. The purpose of the telemarketing text messages was to convince consumers like Plaintiff Derval to use Defendant's recreational marijuana delivery service and purchase Defendant's product.

19. The November 26, 2018 text message received by Plaintiff Derval stated to reply "STOP" to that text message if Plaintiff Derval wanted to stop receiving text messages from Defendant.

20. The text message to Plaintiff Derval's cellular telephone number was from xaler83110000@maritext.com.

21. On or about November 26, 2018, Plaintiff Derval replied "STOP" via text message to the November 26, 2018 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Derval's cellular telephone.

22. On or about December 3, 2018, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. §

227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

23. On or about December 9, 2018, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

24. On or about December 17, 2018, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

25. This December 17, 2018 text message stated to reply "STOP" to that text message if Plaintiff Derval wanted to unsubscribe.

26. On or about December 17, 2018, Plaintiff Derval replied "STOP" via text message to the December 17, 2018 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Derval's cellular telephone.

27. On or about December 18, 2018, Plaintiff Derval again replied "STOP" via text message to the December 17, 2018 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Derval's cellular telephone.

28. On or about December 23, 2018, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

29. On or about December 23, 2018, Plaintiff Derval replied via text message to this December 23, 2018 text message from Defendant and Plaintiff Derval's reply included the language of the TCPA that states that Defendant was required to stop contacting Plaintiff Derval via text message, and requested that Defendant cease contacting Plaintiff Derval.

30. On or about December 30, 2018, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

31. This December 30, 2018 text message stated to reply "STOP" to that text message if Plaintiff Derval wanted to unsubscribe.

32. On or about December 30, 2018, Plaintiff Derval replied "STOP" via text message to the December 30, 2018 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Derval's cellular telephone.

33. On or about January 7, 2019, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

34. This January 7, 2019 text message stated to reply "STOP" to that text message if Plaintiff Derval wanted to unsubscribe.

35. On or about January 7, 2019, Plaintiff Derval replied "STOP" via text message to the January 7, 2019 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Derval's cellular telephone.

36. On or about January 14, 2019, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

37. This January 14, 2019 text message stated to reply "STOP" to that text message if Plaintiff Derval wanted to unsubscribe.

38. On or about January 14, 2019, Plaintiff Derval replied "STOP" via text message to the January 14, 2019 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Derval's cellular telephone.

39. On or about January 21, 2019, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

40. On or about January 28, 2019, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

41. On or about February 11, 2019, Plaintiff Derval received a text message on his cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

42. All of Defendant's text messages to Plaintiff Derval's cellular number were for marketing purposes as Defendant was trying to sell Plaintiff Derval Defendant's services and products.

43. Defendant failed to take any effective steps to cease its unlawful conduct.

44. Upon information and belief, the ATDS used by Defendant has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

45. The ATDS used by Defendant also has the capacity to, and does, call telephone numbers from a list of databases of telephone numbers automatically and without human intervention.

46. The telephone number Defendant text messages was assigned to a cellular telephone service for which Plaintiff Derval incurred a charge for incoming text messages pursuant to 47 U.S.C. § 227 (b)(1).

47. Starting as early as November 26, 2018, Plaintiff Derval revoked, in writing, any consent to Defendant's sending text messages to Plaintiff Derval's cellular telephone with an ATDS as proscribed under 47 U.S.C. § 227(b)(1)(A).

48. The text messages sent by Defendant were in violation of 47 U.S.C. § 227(b)(1).

**FACTUAL ALLEGATIONS AS TO PLAINTIFF SIMMONS**

49. Sometime prior to January 7, 2019, Plaintiff Simmons was assigned, and became the owner of, a cellular telephone number from its wireless provider, with a number ending in "7485."

50. On or about January 7, 2019, Plaintiff Simmons received a text message on her cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. §

227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

51. This January 7, 2019 text message stated to reply "STOP" to that text message if Plaintiff Simmons wanted to unsubscribe.

52. On or about January 7, 2019, Plaintiff Simmons replied "STOP" via text message to the January 7, 2019 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Simmons' cellular telephone.

53. On or about January 14, 2019, Plaintiff Simmons received a text message on her cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

54. This January 14, 2019 text message stated to reply "STOP" to that text message if Plaintiff Simmons wanted to unsubscribe.

55. On or about January 14, 2019, Plaintiff Simmons replied "STOP" via text message to the January 14, 2019 text message from Defendant thereby revoking any consent that may have been granted to Xaler that would have permitted Xaler to contact Plaintiff Simmons' cellular telephone.

56. On or about January 21, 2019, Plaintiff Simmons received a text message on her cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

57. On or about January 28, 2019, Plaintiff Simmons received a text message on her cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. §

227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

58. On or about February 4, 2019, Plaintiff Simmons received a text message on her cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

59. On or about February 11, 2019, Plaintiff Simmons received a text message on her cellular telephone from Defendant, in which Defendant utilized an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and prohibited by 47 U.S.C. § 227(b)(1)(A), for purposes of selling goods or services.

60. All of Defendant's text messages to Plaintiff Simmon's cellular number were for marketing purposes as Defendant was trying to sell Plaintiff Simmons Defendant's services and products.

61. Defendant failed to take any effective steps to cease its unlawful conduct.

62. Upon information and belief, the ATDS used by Defendant has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

63. The ATDS used by Defendant also has the capacity to, and does, call telephone numbers from a list of databases of telephone numbers automatically and without human intervention.

64. The telephone number Defendant text messages was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming text messages pursuant to 47 U.S.C. § 227 (b)(1).

65. Starting as early as November 26, 2018, Plaintiff Simmons revoked, in writing, any consent to Defendant's sending text messages to Plaintiff

Simmons' cellular telephone with an ATDS as proscribed under 47 U.S.C. § 227(b)(1)(A).

66. The text messages sent by Defendant were in violation of 47 U.S.C. § 227(b)(1).

## STANDING

67. Standing is proper under Article III of the Constitution of the United States of America because Plaintiffs' claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendant;

    c. and is likely to be redressed by a favorable judicial decision.

    See, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1543 (2016), and *Lujan v. Defenders of Wildlife,* 504 U.S. 555 at 560.

68. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

   A. *The "Injury in Fact" Prong*

69. Plaintiffs' injuries in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (Id.)*.

70. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In the present case, Plaintiff were text messaged on their cellular phone by Defendant, who utilized an ATDS and/or and artificial or prerecorded voice. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs. All three of these injuries are concrete and *de facto*.

71. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 136 S. Ct. at 1548. In the instant case, it was Plaintiffs' phones that received text

messages and Plaintiffs were distracted from work and compelled to check the text messages sent to Plaintiffs' cellular phones by Defendant. It was Plaintiffs' privacy and peace that was invaded by Defendant's incessant text messages, that were delivered using an ATDS. Finally, Plaintiffs alone are responsible to pay the bill for his cellular phone. All of these injuries are particularized and specific to Plaintiffs, and will be the same injuries suffered by each member of the putative class.

### B. *The "Traceable to the Conduct of Defendant" Prong*

72. The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that its injuries are traceable to the conduct of Defendant.

73. In the instant case, this prong is met simply by the fact that the message was delivered to Plaintiffs' cellular phones directly by Defendant, or by Defendant's representative at the direction of Defendant.

### C. *The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

74. The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

75. In the present case, Plaintiffs' Prayers for Relief include a request for damages for each text message sent by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs and the members of the putative class.

76. Furthermore, Plaintiffs' Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

77. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016)*,* Plaintiffs have standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

78. Plaintiffs bring this action on behalf of himself and on behalf of all others similarly situated ("the Class").

79. Plaintiffs represent, and are members of, the Class, consisting of:

> All persons within the United States who had or have a number assigned to a cellular telephone service, who received at least one text message using an ATDS from Defendant between the date of filing this action and the four years preceding, where such text messages were sent and placed for the purpose of marketing where the recipient did not give their express consent to be contacted by Defendant.

80. Defendant and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

81. Plaintiffs and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiffs and the Class members via their cellular telephones thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, by having to retrieve or administer messages sent by Defendant during those

illegal text messages, and invading the privacy of said Plaintiffs and the Class members. Plaintiffs and the Class members were damaged thereby.

82. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

83. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records and/or Defendant's agent's records.

84. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    i. Whether, within the four years prior to the filing of the Complaint, Defendant sent any text messages (other than a text message sent for emergency purposes or made with the prior express consent of the called party) to the Class members using any ATDS to any telephone number assigned to a cellular telephone service;

    ii. Whether Defendant sent text messages to recipients that had not given their express consent to be contacted by Defendant by text message for marketing purposes;

    iii. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation(s); and

    iv. Whether Defendant should be enjoined from engaging in such conduct in the future.

85. As a person who received calls from Defendant in which Defendant used an ATDS and/or artificial or prerecorded voice, without Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

86. Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. The size of Class member's individual claims causes, few, if any, Class members to be able to afford to seek legal redress for the wrongs complained of herein.

87. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

88. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those that would be presented in numerous individual claims.

89. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION:
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

90. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

91. The foregoing acts and omissions of Defendant constitutes multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

92. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

93. Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION:
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

94. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

95. The foregoing acts and omissions of Defendant constitute multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

96. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiffs and each of the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

97. Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

98. Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs and each Class member the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

99. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

100. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

101. Any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

102. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

103. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

104. Any other relief the Court may deem just and proper.

### TRIAL BY JURY

105. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Respectfully submitted,

Date:  March 13, 2019                **Los Angeles Legal Solutions**

By: s/F. Jay Rahimi____
F. Jay Rahimi, Esq.